UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NICHOLAS A. SWECKER, | ) |
| | ) |
| Petitioner, | ) |
| | ) NO.  CV-06-297-JLQ |
| vs. | ) |
| | ) MEMORANDUM OPINION AND |
| | )ORDER GRANTING RESPONDENT'S |
| JERRY BRADY, | ) MOTION FOR SUMMARY JUDGMENT |
| | ) |
| Respondent. | ) |
| _____ | ) |

Before the court is Respondent's Motion for Summary Judgment, heard without oral argument on April 16, 2007.  Petitioner is proceeding *pro se.*  Assistant Attorney General John J. Samson represents Respondent.     Mr. Swecker is in custody pursuant to his 2001 Spokane County Superior Court convictions for first degree murder and second degree burglary.  He has filed this 28 U.S.C. § 2254 habeas corpus petition challenging his convictions claiming that (1) one of his jurors was biased violating his constitutional rights; and (2) the evidence against him should have been suppressed because it was obtained from an arrest under a statute later determined to be unconstitutional.

Having reviewed the record and being fully advised in this matter, **It Is Hereby Ordered** that Respondent's Motion for Summary Judgment is **Granted** and the Petition for Writ of Habeas Corpus **Denied** for the following reasons.

## Background

On January 24, 2001, officers responded to a report of a possible homicide and robbery at Spokane Indoor Raceway & Hobbies.  The officers found the store-owner shot to death in a back room and that radio-controlled cars and candy had been removed from the store.  They found unusual boot and tennis shoe tracks inside the store, and matching tracks in fresh snow outside the entrance.

The following day, three officers responded to a report of a vehicle prowling in the parking lot outside a Spokane supermarket.  A man inside the supermarket reported that three men had tried to break into his car in the parking lot earlier that day and that the suspects' vehicle was now parked in the parking lot of the supermarket. The officers located the suspects' car.  A  Deputy Sheriff found one man sitting in the back seat of the car and the victim stated that the other two suspects were sitting in the supermarket deli area.  One deputy stayed with the suspect sitting in the car, while two other deputies went inside the supermarket to find the other two suspects.    They found Mr. Swecker sitting in the store's deli area and a store employee told them they could find the third  suspect in a check-out line.

Mr. Swecker was hand-cuffed and detained for suspicion of vehicle prowling.   As a deputy escorted Swecker to the patrol car, the car-prowl victim identified Swecker as the driver of the suspects' car. The deputy recognized  Swecker from previous contacts and arrested him for driving while license suspended.  Another suspect was arrested on two outstanding warrants and another for possession of drug paraphernalia.  The suspects were searched incident to their arrests and the deputies found radio-controlled car parts in one suspect's pocket, a model car motor and checks addressed to the Raceway store in another suspect's pocket, and candy wrappers in the car's back seat.  All three suspects were then transported to jail for questioning concerning their possible involvement in the Raceway homicide. As Mr. Swecker walked from the patrol car into the jail, the investigator who had examined the tracks left at the homicide scene happened to be walking right behind Swecker and recognized that Swecker's tracks in the snow matched the shoe tracks found at the Raceway store.

Swecker was placed in a room in the jail where a deputy advised him of his *Miranda* rights and interviewed him concerning the Raceway homicide and burglary. Swecker denied any involvement.   Swecker was photographed and his shoes and coat were seized as evidence.    In subsequent interviews, the other two suspects implicated Swecker in the homicide and therefore Swecker was interviewed a second time.

In this second interview, Swecker confessed that he had been involved in a robbery that ended in murder when he and the victim struggled for a gun. Swecker  was charged with first degree murder, second degree burglary, first degree unlawful possession of a firearm, and possession of ephedrine with intent to manufacture methamphetamine.  The possession of ephedrine with intent to manufacture methamphetamine charge was later dropped. Prior to trial, Swecker moved to suppress the seized evidence as being tainted by a pre-textual arrest.  The court denied his motion after a hearing and entered findings of fact and conclusions of law.  Swecker was then convicted by a jury of first degree murder and second degree burglary.

Mr. Swecker appealed from his convictions to the Washington Court of Appeals. In addition to his appeal, Swecker filed a post-conviction motion in the Superior Court, which was transferred to the Court of Appeals for consideration as a Personal Restraint Petition.  Swecker also filed a separate Personal Restraint Petition directly in the Washington Court of Appeals.   The Washington Court of Appeals consolidated Swecker's several personal restraint petitions, denied them, and affirmed Swecker's convictions. Swecker then sought review by the Washington Supreme Court, which denied review on November 4, 2003.  The mandate issued on November 12, 2003.

Swecker then filed another Personal Restraint Petition in the Washington Court of Appeals on November 14, 2003, which the court on April 13, 2004, dismissed as being a successive petition. Swecker then sought review by the Washington Supreme Court, which denied review, ruling that Swecker's petition was not an abuse of the writ, but also found no merit to Swecker's claims.  Swecker then filed a motion for reconsideration, which the court treated as a motion to modify the Commissioner's ruling.  The Washington Supreme Court  denied the Motion to Modify the Commissioner's Ruling on October 5, 2004.  The Washington Court of Appeals issued a Certificate of Finality on October 29, 2004.

While Swecker's direct appeal of his convictions remained pending before the Court of Appeals, the Superior Court entered an amended judgment and sentence.  There

was a question under state law as to whether the Superior Court had jurisdiction to do so without the Court of Appeals' permission. The Washington Court of Appeals then granted permission, nunc pro tunc, for the entry of the Amended Sentence.

Swecker then appealed from the Amended Sentence to the Washington Court of Appeals, alleging errors in counting his offender score contending that the trial court erred in counting prior juvenile offenses separately because they were sentenced on the same date in 1996. The Court of Appeals affirmed the Amended Sentence. Swecker then sought review by the Washington Supreme Court, which granted review and affirmed the Amended Sentence on July 14, 2005. The Court issued its mandate on August 12, 2005.

In September, 2004, Swecker filed another Personal Restraint Petition challenging the legality of his arrest in the Washington Court of Appeals, which dismissed his Petition. He again sought review by the Washington Supreme Court, which denied review on June 15, 2006, and issued a Certificate of Finality on August 16, 2006.    On October 10, 2006, Mr. Swecker filed his Petition for Writ of Habeas Corpus in this court. He has exhausted his two claims in State court. The state of Washington and the Respondent have not claimed that Swecker's Petition in this court is untimely or contains unexhausted claims.

## Discussion

### 1. Biased Juror Claim

It is Swecker's claim that a trial juror was biased because her father had been convicted of murder when she was a child. The murder of the Raceway owner had received considerable publicity locally and, during *voir dire*, the trial  judge first asked whether any of the prospective jurors had heard of the case.  Seven of the prospective jurors affirmatively. Two stated that they had formed an opinion and would not be able to follow the court's instructions on the law and approach the case impartially and were, therefore excused.  The court then asked if any of the prospective jurors had themselves experienced a similar or related kind of case or incident.   The juror Swecker now challenges  said she was six or seven years old at the time her father was convicted of

murder 25 years before and that she had very few, very minimal memories of it. She stated that her mother had kept her pretty far away from everything that was going on and she further stated that she did not believe her father's conviction would affect her ability to be fair and impartial in Swecker's case.    A number of other prospective jurors responded yes to the question if  they knew someone connected with the case or had read about the case or seen something about the case on television.  Many of the other prospective jurors attempted to take themselves off the jury with claims of  conflicting schedules, and health problems.

The prosecutor and the defense attorneys were then allowed to ask questions of the prospective jurors.  The defense attorney closely questioned those who had stated they knew something about the case and then questioned the juror Mr.Swecker now challenges.

Attorney: No. 11, I don't mean to pry into your private life and dig up any bad memories.

Juror No. 11 Thats fine.  No problem.

Attorney;: You testified your father had been convicted of murder.  How long ago was that?

Juror No. 11 Almost 25 years ago.

Attorney: Is he still serving a sentence?

Another Juror: No

Attorney: Do you still keep in contact with him at all?

Juror 11: (Shook her head)

Attorney: How old were you when that happened?

Juror 11: 6, almost  7.

Attorney: Do you have any memories about that at all?

Juror 11: About the trial and all that?

Attorney: Yeah, the whole process.

Juror11: Very few, very minimal.  My mom really kind of kept me pretty far away from everything that was going on.

Attorney: Based on what you remember from when you were a kid and anything that anybody has told you since then, do you think that's going to have any effect about how you view this case?

Juror No. 11: I don't believe so.

The defense attorney then went on to question a number of prospective jurors who personally knew a detective who would be testifying or had heard about the case on television or read about it in the newspaper. The trial judge appeared most concerned about a prospective juror that had a heart problem and a scheduled cardiologist appointment . He suggested that the attorneys try to avoid her but did not find sufficient reason to strike her for cause. The trial judge did not note any problem with juror 11. Neither the prosecutor not defense counsel challenged her for cause and neither used a peremptory challenge to remove her from the jury panel. Unchallenged, juror 11 remained on the jury. Based on all of this, the state courts found that this post-trial claim of Mr. Swecker that he had a biased juror lacked any merit.

Under the Antiterrorism and Effective Death Penalty act (AEDPA), 28 U.S.C. § 2254(d), a federal court may not grant relief on any claim adjudicated in state court unless the state court decision was contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court, which imposes a highly deferential standard for evaluating state court rulings. *Clark v. Murphy*, 331 F.3d 1067 (9th Cir. 2003)(quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19 (2002) (per curiam). This deferential review in habeas corpus cases is premised on the fact that the state courts, as part of a co-equal judiciary, are competent interpreters of federal law deserving of respect. *Clark, supra* at 1067.

A state court's decision involves an unreasonable application of federal law if "the state court identifies the correct governing legal principle. . . but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). Even if a federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is

objectively unreasonable *See Early v. Packer,*537 U.S. 3(2002) (per curiam) holding that habeas relief is not proper where state court decision was only "merely erroneous"). Using a test  of clear error fails to give proper deference to state courts by confusing error (even clear errors) with unreasonableness.   *Lockyer v Andrade,* 538 U.S. 63 (2003) (criticizing the 9th Circuit for using the "clear error" standard).   A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established Supreme Court law erroneously or incorrectly.  Rather, that application must be objectively unreasonable. *Id.* A state court ruling may be contrary to a Supreme Court ruling if it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if it confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at an opposite result. *Williams, supra*, @ 362.

A defendant has the right to a trial before a panel of impartial, indifferent jurors. *Irwin v. Dowd*, 366 U.S. 717, 722(1961).  A judge must exclude potential jurors who are unable to set aside preconceptions and decide the case on the evidence presented in court. *Id.* at 722-23. However, it is the burden of the Petitioner to establish that he or she was denied the right to trial by an impartial jury. "It is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote." *Smith v. Phillips,* 455 U.S. 209, 217 (1982).

A reviewing court must accord special deference to the trial judge who sees and hears a juror.  He has the singular opportunity to assess each venire member's demeanor, inflection, and credibility during the *voir dire*.  A trial judge's determination that a particular juror is impartial is a finding of fact, which is presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence.  *Young v. Runnels*, 435 F.3d 1038 (9th Cir. 2006); *see also* 28 U.S.C.§ 2254(e)(1).

Mr. Swecker argues that defense counsel should have challenged the juror because her father had been convicted of murder 25 years earlier.  However, the juror stated during *voir dire* that she did not believe her father's conviction, which had occurred when she

MEMORANDUM OPINION GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT –7

was a young child, would affect her ability to be fair and impartial.   Neither attorney, nor
the trial judge saw any reason to excuse her. Mr.Swecker relies on *United States
v.Gonzalez,* 214 F.3d 1109 (9th Cir.2000) claiming it is a Supreme Court case, which
clearly it is not.  In any event, in that case, the juror in a drug trafficking prosecution
blamed her former husband's drug dealing and drug use for her divorce and did not say
she believed she would be able to be fair and impartial.  Nothing similar exists here and
the state courts reasonably denied this post-trial claim that the juror was biased.

Swecker also cites *Dyer v. Calderon,* 151 F.3d 970 (9th Cir. 1998) where a  juror,
whose brother had been killed six years before,  deliberately and repeatedly lied during
*voir dire* in a case where a defendant was on trial for four counts of kidnaping, two counts
of attempted murder, and two counts of first-degree murder.  She was asked if any relative
of hers had been accused of any offense other than traffic offenses and she replied "no".
To the contrary, her husband had been arrested on rape charges just a month before trial.
Her father had been arrested for kidnaping.  Her uncle, who had lived with the family
from time to time, had been arrested in connection with an armed robbery and a month
before the *voir dire*, a brother was arrested for possession of LSD and marijuana.
The *Dyer* case is clearly a far cry from the case *sub judice* where the juror in question
truthfully stated that her father had been convicted of murder 25 years ago  when she was
a child, that her mother kept her pretty far away from it, and that she did not believe it
would affect her ability to be fair and impartial in Mr. Swecker's case.

Mr. Swecker argues that even if there was no actual juror bias, a presumed or
implied bias existed citing *United States v. Plache*, 913 F.2d 1375 (9th Cir. 1990), where
the court noted that the Supreme Court had never explicitly adopted or rejected the
doctrine of implied bias and the Ninth Circuit had only applied it on rare occasions.
*Plache* was a heroin case where the juror's two sons were serving sentences for heroin
crimes.  The Ninth Circuit had also applied the implied bias rule in a bank robbery case
where the prospective juror worked for the bank that had been robbed.  *Id*.  This is clearly
not such a case.

MEMORANDUM OPINION GRANTING RESPONDENT'S
MOTION FOR SUMMARY JUDGMENT –8

Mr. Swecker also argues that if this court reaches the conclusion that the juror in question was in fact biased, his trial counsel was ineffective for not moving to excuse the allegedly biased juror. He relies on a newly executed declaration signed in November 2006, in which his trial counsel alleges in hindsight that he should have removed the juror. The declaration states that this juror indicated during *voir dire* that she was unsure how the conviction of her father would affect her in a similar case.   No such declaration was filed with the state courts, when they decided Mr. Swecker's post-trial biased juror claim. Of course, this court has not reached the conclusion that the challenged juror was biased, rather, the court has concluded to the contrary.  Nevertheless, there was no such declaration from Swecker's counsel  before the state court, when they denied Mr. Swecker's biased juror claim. It is also clear that the recollection of counsel as reflected in his declaration is not accurate as to what the challenged juror said during *voir dire*. There is a complete lack of evidence before this court that the juror Mr. Swecker now challenges was biased against him in any way or that his trial counsel was ineffective in not challenging juror No. 11.

## 2.  Illegal Seizure of Evidence Claim

Mr. Swecker next claims that the evidence against him should have been suppressed because it was illegally seized as a result of his arrest pursuant to a statute later determined to be invalid, a Fourth Amendment claim.  The Fourth Amendment guarantees the right of people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures and the exclusionary rule is designed to effectuate those rights. *Stone v. Powell,* 428 U.S. 465, 482 (1976).  The rule is a remedial device to deter future misconduct by removing the incentive to disregard the Fourth Amendment.  Therefore, evidence obtained in violation of the Fourth Amendment is excluded in the hope that the frequency of future violations will decrease. *Id.* at 492.   Accordingly, the *Powell* Court found that a 4th Amendment claim is for the state courts to resolve and not a subject for habeas review.

> An "opportunity for full and fair litigation" means just that: an opportunity. If a state provides the processes whereby a defendant can obtain full and fair litigation of Fourth Amendment claim, *Stone v. Powell* bars federal habeas consideration of that claim whether or not the defendant employs those processes.

*Caver v. Alabama,* 577 F.2d 1188, 1192 (5th Cir. 1978). If the state's judicial procedure affords the criminal defendant an opportunity to litigate a Fourth Amendment claim, *Powell* precludes the petitioner from seeking federal habeas review, regardless of whether the petitioner availed himself of that opportunity. *Gordon v.Duran,* 895 F.2d 610, 613 (9th Cir. 1990); *Siripongs v. Calderon,* 35 F.3d 1308, 1321 (9th Cir. 1994).

Having initially been arrested for driving while license suspended, Swecker was also under suspicion for vehicle prowling. When questioned at the police station, the other two suspects in the vehicle prowling implicated Mr.Swecker in the homicide. After initially denying any involvement, Mr Swecker confessed that the victim sustained the fatal shot when he and the victim struggled for possession of a gun. Swecker then unsuccessfully moved to suppress his statement arguing that his arrest for driving while license suspended was a pretext to investigate his involvement in the homicide.

In 2004, several years after Swecker's arrest and trial, the Washington Supreme Court in *City of Redmond v. Moore,* 151 Wn.2d 664, 91 P.3d 875 (2004) held that Washington's statutory provisions for mandatory suspension of a drivers license without a hearing, violated due process. Mr. Swecker therefore claims that the evidence found in the search incident to his arrest for driving while license suspended should have been suppressed and that without that evidence, there was insufficient evidence to support his convictions. However, both Division One and Division Three of the Washington Court of Appeals held in separate cases that arrests for driving while license suspended, before *Moore* was issued by the Washington Supreme Court, were supported by probable cause and, therefore, the searches incident to those arrests were valid. The court hearing Mr. Swecker's PRP, Division III of the Washington Court of Appeals, found that there was probable cause to arrest Mr. Swecker and agreed with those two cases and dismissed Mr. Swecker's PRP containing this claim. Mr. Swecker then appealed to the Washington

Supreme Court which held that his petition had been properly dismissed and the fact that Mr. Swecker's license may have been suspended in violation of due process did not render unlawful his arrest for driving with a suspended license and denied his Motion for Discretionary Review.

Therefore, it is clear that Mr. Swecker litigated and lost his claim that the evidence against him was illegally obtained because he it was obtained pursuant to a statute later declared unconstitutional in the Washington appellate courts.  That claim is not cognizable in this habeas corpus proceeding.

Because Mr. Swecker's First Claim of a biased juror has no merit and his Second Claim of a violation of the Fourth Amendment is not appropriately before this court, the Respondent's Motion for Summary Judgment is **Granted.**  Mr. Swecker's Petition For Writ Of Habeas Corpus must also be and is **Denied**.

**IT IS SO ORDERED.**  The Clerk is further directed to enter this Order, enter judgment  in favor of the Respondent denying the Petition For Writ of Habeas Corpus, forward copies to Mr. Swecker and to counsel for the Respondent, and close this file.

**DATED** this 19th day of April, 2007.

s/ Justin L. Quackenbush
JUSTIN L. QUACKENBUSH
SENIOR UNITED STATES DISTRICT JUDGE